UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **THE PROVIDENT BANK,** | Civ. No. 12-cv-07133 (KM) |
| Plaintiff, | |
| | OPINION |
| v. | |
| **MARC ANTONUCCI and ROBERT TARABOCCHIA,** | |
| Defendants. | |

**MCNULTY, U.S.D.J.,**

Plaintiff Provident National Bank ("Provident") brings this action to enforce personal guarantees. The defendants, Marc Antonucci and Robert Tarabocchia, were the sole shareholders of Specialty Flooring Systems, Inc. ("SFS"), a floor contracting business, and Antar Realty, L.L.C. ("Antar"), an entity formed to purchase the property where SFS had its offices. Provident provided two working capital loans totaling $5.5 million to SFS, and a mortgage loan of approximately $1.9 million to Antar. Antonucci and Tarabocchia signed personal guarantees in connection with those loans. In late 2011, SFS and Antar defaulted on the three loans. Provident thereafter filed a complaint in foreclosure in the New Jersey Superior Court Division of Chancery. The Superior Court entered a judgment of foreclosure against SFS and Antar, but Provident has not recovered anything near the amount owed on the loans.

1

Provident then filed this action to enforce the personal guarantees. Tarabocchia failed to respond to the Complaint and a default judgment was entered against him.[1] Antonucci answered and filed counterclaims asserting several grounds for relief under contract and tort law. Now before the Court is Provident's motion for summary judgment on its breach of contract claims against Antonucci, and on Antonucci's counterclaims. For the reasons set forth below, this Court will grant Provident's motion.

## I. BACKGROUND

Provident is a New Jersey chartered stock capital savings bank. SFS, before it was dissolved, was an industrial flooring contractor incorporated in New Jersey. SFS operated out of property in South Plainfield, New Jersey, that was owned by Antar, a New Jersey limited liability company. Antonucci, a Pennsylvania resident, was a shareholder and officer of both SFS and Antar. Antonucci signed guarantees of payment to secure working capital and mortgage loans issued by Provident to SFS and Antar.

### The Working Capital Loans to SFS

Provident and SFS executed a Loan and Security Agreement (the "LSA") on November 5, 21010. (The Provident Bank's Statement of Material Facts Not in Dispute, Dkt. No. 36-2, ¶5) Under the LSA, Provident agreed to lend $2 million to SFS in two separate tranches of $1 million (collectively, the "Term Loan"), each of which bore a different interest rate. (*Id.* ¶7) The LSA also provided that Provident would establish a revolving credit facility with a $3 million limit (the "Revolving Credit Loan"). (*Id.* ¶15) That limit was later raised to $3.5 million for the period from February 28, 2011 to August 31, 2011. (*Id.* ¶¶19, 21) In exchange for the loans, SFS provided Provident with two notes: (1) a Term Note evidencing its promise to repay the Term Loan by making 60 monthly payments of principal and interest (*Id.* ¶¶12-13); and (2) a Revolving

---

[1] After the default judgment, Defendant Tarabocchia was terminated as a party to this action (Dkt. No. 25).

Credit Note in which it agreed to repay the amount drawn from the credit facility on a monthly basis. (*Id.* ¶16) To secure those payment obligations, SFS pledged its assets—including inventory, equipment, and accounts receivable—as collateral. In addition, Antonucci executed a Guarantee of Payment in which he personally and unconditionally guaranteed the full payment of SFS's debts. (*Id.* ¶36) Antonucci does not deny that he executed this guarantee in favor of Provident. On November 5, 2010, Provident advanced the required sum of $2 million under the Term Loan. By August 31, 2011, SFS had drawn nearly the full amount of the $3.5 million Revolving Credit Loan.

### The Mortgage Loan to Antar

There was a loan to Antar as well. Provident and Antar signed a Mortgage and Security Agreement (the "MSA") on November 5, 2010. Under the MSA, Antar would borrow $1,893,750 (the "Mortgage Loan") to purchase a property in South Plainfield, New Jersey, to use as an office for SFS. (*Id.* ¶¶26, 28) Under the Mortgage Note, Antar would make 59 monthly payments of principal and interest over a five-year term. (*Id.* ¶¶29, 31) Antar granted Provident a security interest in the mortgaged property. Antonucci provided additional security by executing a Guarantee of Payment on the Mortgage Loan. Antonucci does not deny that he executed this personal guarantee in favor of Provident. The Mortgage Loan closed on November 5, 2010, and Provident disbursed the funds to Antar.

### SFS and Antar Default on the Loans

Beginning on December 1, 2010, Antar was required to make monthly payments under the Mortgage Note. SFS was also required to make monthly payments to Provident under the Term Note and the Revolving Credit Note. (*Id.* ¶¶12-13, 16, 31) By late 2011, however, SFS and Antar were short on cash. In November 2011, SFS stopped making monthly payments on the Term Loan and the Revolving Credit Loan. (*Id.* ¶¶13, 23). In December 2011, Antar stopped making monthly payments on the Mortgage Loan. (*Id.* ¶33) As a result of these

3

defaults, Provident was authorized to accelerate all three loans and demand payment in full plus accrued interest. (*See* Dkt. No. 36-5, attachments "B," "C," and "G") In 2012, SFS went out of business. (Deposition of Marc Atonucci, Dkt. No. 36-8, at 73) In May 2012, Provident sold certain assets SFS had pledged as collateral for the Term Loan and Revolving Credit Loan at public auction for $90,000. (Dkt. No. 41-1, at 6)

### Alleged Oral Agreements with Provident

Antonucci does not deny signing the guarantees, but alleges that the amount owed by SFS and Antar—and thus by himself as guarantor—was reduced as part of an oral agreement with Provident. Antonucci claims that sometime in September of 2011, before the defaults occurred, he met with Mark Jones, a Provident vice president, to discuss the possibility of a workout. (Dkt. No. 36-8, at 13) At this meeting, says Antonucci, he and Jones made an oral agreement whereby Provident "forgave...the mortgage payments" for an unspecified time "to give [SFS and Antar] some cash flow and continue operations." (*Id.* at 15). In the event of a default on the Mortgage Loan, Provident allegedly agreed to accept the proceeds from the sale of the mortgaged property. Antonucci was to conduct that sale in lieu of foreclosure. (*Id.*). Finally, Provident allegedly orally agreed to waive Antonucci's liability under the personal guarantee if there was a shortfall between the sale price and the amount of the Mortgage Loan. (*Id.*; *see also* Antonucci's Answer with Affirmative Defenses and Counterclaims, Dkt. No. 5, at 9, ¶13) Antonucci admits that this alleged agreement was never reduced to writing.

### Foreclosure Action

On October 5, 2012, Provident filed a complaint in foreclosure in the Chancery Division of the New Jersey Superior Court, Middlesex County, naming SFS, Antar, Antonucci, and Tarabocchia. (*Id.* ¶56). On May 28, 2013, the Superior Court found that SFS and Antar were in default and granted

judgment in favor of Provident. (*Id.* ¶58) That court entered a judgment of foreclosure against SFS and Antar, which ordered the following:

> [T]he Plaintiff The Provident Bank is entitled to have the sum $7,775,941.11, together with lawful interest from March 8, 2013, until the same be paid and satisfied, together with costs of this action to be taxed, including a counsel fee of $7,500.00, raised and paid in the first place out of the Mortgaged Property and Collateral described in the complaint in foreclosure.

The amount of the judgment includes both SFS's liability under the Term Note and Revolving Credit Note, and Antar's liability under the Mortgage Note. (*See id.* at Ex. 10) Neither SFS nor Antar has satisfied the judgment.

This Action

On November 16, 2012, having received no payments from SFS or Antar in satisfaction of the judgment of the Chancery Division,[2] Provident commenced this federal court action to enforce Atonucci's personal guarantees. Count 1 of Provident's complaint alleges that Atonucci breached his Guarantee of Payment of the Term Note and Revolving Credit Note; Count 2 alleges that he breached his Guarantee of Payment of the Mortgage Note. (Pl. Compl., Dkt. No. 1, ¶¶32-42).[3] The complaint seeks an award of $7,954,865.23, comprising the amount of the Chancery Court judgment plus a calculation of accrued interest.

Antonucci's answer includes four counterclaims. Count 1 of the Counterclaim alleges that, by foreclosing on the mortgaged property and seeking to collect on Antonucci's guarantee on the Mortgage Note, Provident breached its alleged oral agreement of forbearance with Antonucci. (Dkt. No. 5, at 9-10) Count 2 asserts a claim for tortious interference with prospective

---

[2] The assets SFS pledged as collateral for the Term Loan and Revolving Credit Loan were sold for $90,000 before the Chancery Division's judgment of foreclosure. The Antar property—the collateral for the Mortgage Loan—had not been sold as of the date Provident moved for summary judgment, and the Court has not been advised of any subsequent sale.

[3] Counts 3 and 4 of Provident's Complaint assert identical claims against Tarabocchia, which are not relevant here. (Dkt. No. 1, ¶¶43-53)

5

contractual relations. By instituting foreclosure proceedings, Provident allegedly interfered with Antonucci's efforts on behalf of Antar to sell the mortgaged property as orally agreed. (*Id.* at 10) Count 3, a claim for "unjust enrichment," alleges that "Provident received and accepted the benefit of Antonucci acting in good faith" without conferring an equivalent benefit of good faith dealing in return. (*Id.* at 11, ¶¶28-29) Count 4 seeks recovery on the basis of quantum meruit for "valuable services, labor and/or materials" that Antonucci allegedly provided to Provident. (*Id.* at 11-12)

Provident has moved for summary judgment on Counts 1 and 2 of its Complaint and on all of Antonucci's counterclaims.

## II.  JURISDICTION

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

## III.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by

'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* FED. R. CIV. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial.").

## IV. ANALYSIS

### A. Provident's Breach of Contract Claims

In a contract action based on diversity of citizenship, the district court must apply the substantive law of the state in which it sits. *Am. Cyanamid v. Fermenta Animal Health Co.*, 54 F.3d 177, 180 (3d Cir. 1995); *see generally Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). To prove a claim for breach of contract under New Jersey law, Provident must show that "the parties entered into a valid contract, that the defendant failed to perform [its] obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007). Provident argues that there are no material issues of fact concerning Antonucci's breach of the guarantees, for two reasons: First, the precise amount for which SFS and Antar are liable on their loans, conclusively established in the prior state court action, must be given effect here under the doctrine of collateral estoppel. Second, Antonucci does not contest the validity of the guarantee agreements,

nor does he deny that, as guarantor, he is liable for the relevant unpaid debts of SFS and Antar. (Dkt. No. 36-1, at 18-22)

Antonucci replies that summary judgment should be denied because an alleged oral agreement with Jones on behalf of Provident creates a factual dispute regarding the existence or scope of his liability under the guarantees. (Dkt. No. 41-1, at 8-9) Antonucci also asserts that there is a factual issue as to the proper amount of damages. The gist of this allegation seems to be that Provident deliberately sold the assets SFS pledged as collateral for the Term Loan and Revolving Credit Loan for less than their market value. Provident engaged in this seemingly self-defeating course of action, Antonucci alleges, so that it could steer the sale proceeds to its "professional associates" while reserving the right to go after Antonucci for the remainder of the debt. (Dkt. No. 41-1, at 11)

Under the judgment of the Chancery Division—of which I take judicial notice[4]—there is no question that SFS and Antar are in default under the Term Loan, the Revolving Credit Loan, and the Mortgage Loan. Moreover, Antonucci does not contest that the guarantees are valid, that he is liable for the debts of SFS and Antar as guarantor, or that Provident will suffer damages if the guarantees are not enforced. Accordingly, summary judgment may be granted if: (i) there is no factual dispute regarding Antonucci's failure to perform his obligations under the contract; and (ii) there is no factual dispute regarding the amount of damages owed to Provident.

### 1. The Alleged Oral Agreement with Provident

Antonucci claims that he is not in breach of the guarantee agreements, or alternatively that he owes less money, because he entered into an oral contract with Provident. The enforceability, or not, of that alleged oral

---

[4] *See* FED. R. EVID. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute..."); *McTernan v. City of York, Pa.*, 577 F.3d 521, 526 (3d Cir. 2009) ("[A] court may take judicial notice of a prior judicial opinion."). At any rate, there seems to be no dispute as to the existence or contents of the prior judgment.

8

agreement is thus the key to summary judgment on Provident's claims, as well as certain of the Counterclaims. Provident contends that factual disputes about the oral agreement are not material; even assuming *arguendo* that the oral agreement exists, it is invalid under both the New Jersey Statute of Frauds and the express provisions of the loan documents. (Dkt. No. 36-1, at 14-18)

    The only evidence of the alleged oral agreement is Antonucci's deposition testimony. As Antonucci describes it, the agreement has three principal elements: (1) Provident would agree to a sale of Antar's mortgaged property in lieu of foreclosure, if Antonucci would agree to manage the sale; (2) Provident would agree to relieve Antonucci of personal liability for any shortfall between the sale price and the Mortgage Loan; and (3) Provident would agree to forgive certain loan payments. It is difficult to pin down precisely which loan payments Provident allegedly agreed to forgive. Antonucci testified at his deposition that Provident excused Antar's payments on the Mortgage Loan for some unspecified duration in order to bolster SFS's cash flow so that it could pay down the Term Loan. (*See* Dkt. No. 36-8, at 16) In his moving papers, however, Antonucci claims that Provident agreed that SFS and Antar could defer payment on *all* of Provident's loans, not just the Mortgage Loan. (*See* Dkt. No. 41-1, at 8; Dkt. No. 36-1, at 19)

    In the end, however, uncertainty about the terms and even the existence of the alleged oral agreement does not give rise to a material issue of fact. Under the New Jersey Statute of Frauds, an agreement to relinquish enforcement remedies in a commercial loan contract is unenforceable unless it is "in writing[] and signed by the party to be charged therewith." *See* N.J. Stat. Ann. 25:1-5(f)-(g). Specifically, the Statute of Frauds bars an action upon an oral agreement by a loan creditor "to forebear from exercising remedies pursuant to a contract" that meets the following three specifications: (i) the loan must be for an amount greater than $100,000; (ii) the funds cannot be used "primarily for personal, family or household purposes"; and (iii) the loan itself must be "made by a person engaged in the business of lending...money or extending credit." N.J. Stat. Ann. 25:1-5(f). There is no dispute that the LSA

9

and MSA loans possess these three requisites of a commercial loan contract. Therefore, even if I assume that Provident did agree to forgive or reduce Antonucci's liability, that agreement would be unenforceable unless evidenced by a writing signed by Provident. *See The Provident Bank v. Bonicci*, 2012 WL 2283458, at *3 (N.J. Super. Ct. App. Div. June 19, 2012) (not precedential) (bank representative's statement that surrender of collateral would satisfy the defendant's personal obligation on the loan was unenforceable without written evidence of agreement); *National Community Bank of New Jersey v. G.L.T. Industries, Inc.*, 276 N.J. Super. 1, 4 (App. Div. 1994) (statute of frauds applied to alleged oral agreement to forebear from enforcing remedies). It is undisputed that there exists no such writing. The alleged oral agreement is unenforceable as a matter of law.

      That conclusion, although compelled by the Statute of Frauds, is further supported by the plain language of the loan documents. The LSA and MSA both provide that any waiver of Provident's remedies is invalid unless it is reduced to writing and signed by Provident. (*See* LSA, Dkt. No. 36-6, at 24 ("[N]o waiver will be valid unless in writing and signed by Lender and then only to the extent specified."); MSA at 95 ("[T]his mortgage cannot be altered amended, waived, modified or discharged orally, and no executory agreement shall be effective to modify...anything contained in this Mortgage unless it is in writing and signed by the party against whom enforcement of the modification...is sought.")). Antonucci's guarantees for the Term Loan, Revolving Credit Loan, and the Mortgage Loan contain similar provisions. (*See* Guarantee of Payment for Term/Revolving Credit Loan, Dkt. No. 44, at 2 ("This Guarantee contains the entire agreement of the parties...and none of the terms and provisions hereof may be waived, amended or terminated except by a written instrument signed by the Person against whom enforcement...is sought."); Guarantee of Payment for Mortgage Loan, Dkt. No. 36-7, at 8 (identical language)). Even setting aside the Statute of Frauds, then, the loan agreements themselves bar the alleged oral modification.

Accordingly, summary judgment is awarded in favor of Provident as to Antonucci's liability on the guarantee.

## 2. Amount of Damages

Antonucci next argues that summary judgment should be denied because the amount of damages is in dispute. "While New Jersey law does not require absolute precision as to the amount of damages sustained in order to grant a party summary judgment on a breach of contract claim, it does place a burden on plaintiff to prove the amount of damages to a reasonable degree of certainty." *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 219 F. Supp. 2d 600, 605 (D.N.J. 2002) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1176 (3d Cir. 1993)). Provident argues that the amount of damages it has suffered—and thus the amount for which Antonucci is liable as guarantor—has been conclusively established by the Chancery Court's judgment of foreclosure. Provident therefore maintains that Antonucci is collaterally estopped from challenging the amount of damages. (Dkt. No. 42, at 6)

Antonucci cannot dispute that the Chancery Court's judgment exists, and is valid. *See* n.4, *supra*.[5] Instead, Antonucci contends that actions taken

---

[5] The most direct view is that, as a matter of contract, the very existence of the judgment renders Antonucci liable as guarantor. By the somewhat more roundabout route of collateral estoppel, we get to the same result: the prior judgment binds Antonucci. Under the applicable law of New Jersey, a party seeking to invoke preclusion must show that "(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *Winters v. N. Hudson Reg'l Fire & Rescue*, 50 A.3d 649, 659 (N.J. 2012) (line breaks added for clarity); *see also Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (general federal standard). Here, the indebtedness of SFS and Antar—the condition precedent for Antonucci's liability as guarantor—was adjudicated by and fully litigated in the Chancery Division; that indebtedness was necessary to the Chancery Division's judgment of default; and Antonucci—as one of two shareholders in SFS and Antar and as an individually named party—was present and fully represented in the prior action, and he knew at

by Provident *after* the Chancery Division rendered its judgment create a material dispute as to the amount of damages. Antonucci claims that Provident failed to mitigate its own losses because it sold the assets SFS pledged as collateral for the Term Loan at a below-market price. Thus, says Antonucci, "the Plaintiff managed to take Assets with a value of $1,000,000 and sell them for only $90,000." (Dkt. No. 41-1, at 11) Provident's strategy, according to Antonucci, was to "use the liquidation as an opportunity to benefit other individuals that it had a relationship with by hiring an unnecessary amount of these professionals to do a number of unnecessary tasks." (*Id.* at 10) Antonucci further alleges that Provident chose an inappropriate agent to collect SFS's receivables, which led to an "unreasonably low amount being recovered". (*Id.* at 12) Because of this alleged malfeasance, Antonucci claims, he is "left with significantly more personal liability than he would have been responsible for" if the liquidation of assets and collection of receivables were conducted in the proper manner. (*Id.*) Because these acts allegedly "did not occur until after the [Chancery Division's] Judgment," granting summary judgment would "defeat the purpose of the potential for counter-claims and abuse the doctrine of collateral estoppel." (*Id.*)

This alleged factual dispute is built on nothing more than the unsupported assertions of Antonucci's counsel. Antonucci's arguments on this point contain no citations to the record. He provides no evidence, affidavit, or testimony that SFS's assets were worth $1,000,000, that Provident hired too many professionals to conduct the asset sale, or that its selection of the agent to collect SFS's receivables was improper.[6] At any rate, these allegedly improper actions did not occur "after the [state court] Judgment," as Antonucci states: SFS liquidated its assets in May 2012, over a year before the Chancery

---

all times of his potential liability as a guarantor. No fairness issues, such as binding a party to a judgment it could not oppose, or lacked the incentive to oppose, arise in this situation. *Id.* at 248-49 (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330–31 (1979).

---

[6] In any event, the time to challenge the asset sale procedures, of which he had notice, would have been in connection with that sale.

12

Division's June 2013 judgment. (Dkt. No. 42, at 14 n.6) Any objections could and should have been raised then.

The unsworn statements of Antonucci's counsel are plainly insufficient to raise an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, ("Rule 56(e) [] requires the nonmoving party to go beyond the pleadings..."); *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir.1990) ("unsworn statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are unsupported allegations in the pleadings"). The Chancery Division adjudged that, as a result of the defaults by SFS and Antar, Provident suffered damages in a then-current total amount of $7,775,941.11. Under the terms of the Guarantees, Antonucci is liable in full for that outstanding corporate debt. He has failed to raise a genuine, material issue of fact regarding the alleged reduction of the balance as a result of Provident's subsequent conduct. Accordingly, Provident is entitled to seek from Antonucci that amount as well as any interest that has accrued since the date of the state court judgment.

For the foregoing reasons, Provident's motion for summary judgment on its breach of contract claims is granted. SFS has defaulted on the working capital loans, and Antar has defaulted on the mortgage loan. A binding state court judgment so holds. It is undisputed that, as guarantor, Antonucci is liable for these outstanding debts. It is also undisputed that Antonucci has failed to pay these debts and thereby discharge his obligations under the guarantees. The alleged oral argument he raises in defense is unenforceable as a matter of law. I therefore find that Antonucci is liable under the guarantees for the $7,775,941.11 judgment of the Chancery Division plus the interest that has accrued to date.

## B. Antonucci's Counterclaims

Provident also seeks summary judgment on Antonucci's four counterclaims. Antonucci has failed to respond substantively to any of Provident's arguments for summary judgment on the counterclaims. Provident therefore urges me to deem the counterclaims abandoned. It is true that where "a party responds to a dispositive motion, but only attempts to defend some subset of the claims that are subject to the motion," the undefended claims may be deemed abandoned. *Blakeman v. Freedom Rides, Inc.*, 2013 WL 3503165, at *13 (D. Del. July 10, 2013); *see also Pollis v. Bd. of Chosen Freeholders*, 2012 WL 1118769, at *3 (D.N.J. Apr. 13, 2012) (finding plaintiff's failure to respond to the defendant's qualified immunity argument in its motion for summary judgment amounts to "a concession that [the] [d]efendants are correct"); *Lawlor v. ESPN Scouts, LLC*, 2011 WL 675215, at *2 (D.N.J. Feb. 16, 2011) (finding promissory estoppel claim abandoned where defendants, in moving to dismiss, argued that the plaintiff was paid the amount owed, and where plaintiff did not respond in any way to the defendants' argument) (citing *Conroy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir. 2009) ("We find this undeveloped argument has been waived.")); *Seals v. City of Lancaster*, 553 F. Supp. 2d 427, 432 (E.D.Pa. 2008) ("Plaintiff failed to address this portion of defendant's motion for summary judgment in her response ... [t]herefore, plaintiff's failure ... constitutes abandonment of those claims.") I will nevertheless briefly review the sufficiency of Provident's showing in favor of summary judgment on each of Antonucci's four counterclaims.

### 1. Breach of the Alleged Oral Agreement

Count One of the Counterclaim alleges that Provident breached the alleged oral agreement with Antonucci by instituting foreclosure proceedings and commencing this action against him. As discussed above, however, the alleged oral agreement is unenforceable under both the New Jersey Statute of Frauds and the express provisions of the LSA and MSA. *See* Section IV.A.1,

14

*supra*. Because it does not rest on a valid and enforceable contract, the breach of contract counterclaim must fail as a matter of law. Summary judgment is awarded in favor of Provident on Count 1 of the Counterclaim.

### 2. Tortious Interference with Prospective Contractual Relations

Count Two of the Counterclaim alleges that Provident tortiously interfered with Antonucci's efforts to sell the Antar property. Antonucci contends that he was actively marketing the Antar property to prospective buyers, and that "[i]f Provident did not institute the Foreclosure Action and the present action… [then] the Property would be sold." (Dkt. No. 5, at 10 ¶23)

Under New Jersey law, a claimant alleging tortious interference with contractual relations must demonstrate: "(1) that plaintiff had a reasonable expectation of an economic benefit or advantage; (2) that defendant knew of plaintiff's expectancy; (3) that defendant wrongfully and intentionally interfered with this expectancy; (4) a reasonable probability that but for defendant's wrongful interference, plaintiff would have realized the economic benefit; and (5) that plaintiff was injured as a result of defendant's conduct." *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n, Inc.*, 256 F. Supp. 2d 249, 288 (D.N.J. 2003) (citing *Printing Mart–Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739 (1989), and *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 186 (3d Cir. 1992)). Where the claimant alleges tortious interference with *prospective* contractual relations, the requirements are identical except that the claimant must demonstrate a "reasonable probability" of a prospective contract. *See Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1015 (3d Cir. 1994).

Antonucci has failed to raise a dispute of material fact with regard to any of the elements of his tortious interference claim. His moving papers do not cite to any record evidence that there were prospective buyers, or that Antonucci had a reasonable probability of consummating such sales but for Provident's foreclosure. Moreover, Provident had the absolute right to foreclose on the Antar property. That right was not relinquished pursuant to the alleged oral

agreement, which (if it existed) was unenforceable. *See* Section IV.A.1, *supra*. Therefore, Provident could not have *wrongfully* interfered with Antonucci's rights by instituting the foreclosure action. Where a party acts in the legitimate pursuit of its own legal and commercial interests, its conduct, even if harmful to plaintiff, cannot amount to tortious interference. *See, e.g., Cargill Global Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 576 (D.N.J. 2010) (stating that wrongful interference means that "the interference was inflicted ... without justification or excuse") (quoting *Mandel v. UBS/PaineWebber, Inc.*, 373 N.J. Super. 55, 79–80 (App. Div. 2004)); *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 201 (App. Div. 1995) (noting that even if the defendant's behavior had been motivated by spite and was directly aimed at hurting the plaintiff's business, it would not rise to the level of tortious interference because the defendant had a "legitimate business reason to 'target' [the plaintiff] ... regardless of any other motivation.").

Antonucci's counterclaim for tortious interference with prospective contractual relations fails as a matter of law. Summary judgment is awarded in favor of Provident on Count 2 of the Counterclaim.

### 3. Unjust Enrichment and Quantum Meruit

Counts Three and Four of the Counterclaim seek recovery on the bases of unjust enrichment and quantum meruit for the value of services provided or benefits conferred for the benefit of Provident. Unjust enrichment and quantum meruit, equitable remedies, are typically pled together in the absence of a valid and enforceable contract. *See Ramon v. Budget Rent–A–Car Sys.*, 2007 WL 604795, at *5 (D.N.J. Feb. 20, 2007) (quasi-contract theories of recovery are generally disfavored where a valid, express contract covers the subject matter in dispute). To establish a claim for unjust enrichment, "a plaintiff must show both that [the] defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). To recover under quantum meruit, the claimant "must

establish that the services were performed with an expectation that the beneficiary would pay for them, and under circumstances that should have put the beneficiary on notice that the plaintiff expected to be paid." *Weichert Co. Realtors v. Ryan*, 128 N.J. 427 (1992). These causes of action, though quite similar, are nevertheless distinct: under quantum meruit, although the parties never formed a valid and enforceable agreement, a court may find their relationship sufficiently contractual as to permit implication of a contract "in fact." Under unjust enrichment, by contrast, recovery is not premised upon quasi-contract, but rather upon society's interest in preventing one party from retaining a benefit without compensating the provider. *See generally Barnert Hosp. v. Horizon Healthcare Servs., Inc.*, 2007 WL 1101443, at *6 (D.N.J. Apr. 11, 2007).

The essence of Antonucci's allegations in Counts 3 and 4 is that he expended "services, labor and/or materials" (Dkt. No. 5, at 11 ¶36) to market the Antar property for sale, and that Provident should compensate him for those efforts. Antonucci has not raised a dispute of material fact. There is no basis in the record for an inference that Antonucci's efforts to market the Antar property—which appear to have consisted of merely listing the property with a real estate broker (Declaration of Mark P. Jones, Dkt. No. 36-9, ¶16)— conferred a benefit upon Provident. The property has been on the market since 2012 and currently remains unsold. (*Id.*)

As to Count 3, listing the property for sale cannot be said to have enriched Provident, whether justly or unjustly. Nor would Provident's retention of any arguable benefit be unjust. As the mortgagee of the Antar property, Provident had a contractual right to institute foreclosure proceedings after Antar defaulted. Provident cannot be compelled to compensate Antonucci because he tried and failed to sell the property as a last-ditch effort to avoid foreclosure. Accordingly, summary judgment is granted in favor of Provident on Count 3 of the Counterclaim.

Likewise, as to Count 4, there is no basis in the record for an inference that Antonucci undertook to market the Antar property with the expectation of payment. Indeed, in Antonucci's own telling, Provident orally agreed to have Antonucci sell the property as part of deal to compensate *Provident* for debts *owed by Antonucci* in his capacity as Antar's guarantor. Summary judgment is therefore granted in favor of Provident on Count 4 the Counterclaim.

## IV. CONCLUSION

For the foregoing reasons, Provident's motion for summary judgment on Counts 1 and 2 of its Complaint and on Counts 1-4 of Antonucci's Counterclaim is **GRANTED**.

An appropriate Order will issue.

Dated: December 12, 2014

*/s/ Kevin McNulty*
**KEVIN MCNULTY**
**United States District Judge**